RYAN T. MARDOCK
California Bar No. 274752
**FEDERAL DEFENDERS OF SAN DIEGO INC,**
225 Broadway, Suite 900
San Diego, California 92101-5030
ryan_mardock@fd.org
(619) 234-8467

Attorneys for Jiandong Chen,

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**HONORABLE ROBERT S. HUIE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JIANDONG CHEN,<br>Defendant. | Case No. 3: 24-cr-1317-RSH-002<br><br><u>MR. CHEN'S SENTENCING MEMORANDUM</u><br><br>Date: November 13, 2026<br>Time: 9:00 a.m. |

TO: DISTRICT JUDGE ROBERT S. HUIE; ADAM GORDON, UNITED STATES ATTORNEY; AND P. KEVIN MOKHTARI, ASSISTANT UNITED STATES ATTORNEY:

Jiandong Chen (Mr. Chen), by and through his counsel, Ryan T. Mardock, and the Federal Defenders of San Diego, Inc., files the following sentencing memorandum. Mr. Chen has reviewed the Presentence Report (PSR) with defense counsel, and objections to the PSR have been timely filed. At this juncture, there does not appear to be any good cause why sentencing, currently set on November 13, 2026, at 9:00 a.m., should not proceed forward.

//

//

## I. Introduction

When Mr. Chen decided to come to the United States, he did not do so with the intention of becoming involved in criminal activity. To the contrary, Mr. Chen left China because his restaurant business had been decimated by the effects of COVID-19. A collage graduate[1], and restricted by China's prolonged shutdown, Mr. Chen found himself unable to secure employment. He was responsible for supporting his wife, their son, and his parents. However, due to the restrictive limitations China placed on its citizens post-COVID, Mr. Chen lost his home, his savings, and eventually his marriage. Desperate, he came to the United States.

Mr. Chen is deeply remorseful for his decision to commit this offense. He "never meant to become a fraudulent person." In fact, Mr. Chen "regrets his conduct every day." He never intended to hurt people. He often thinks about the victims, and wishes he could apologize to them directly. Mr. Chen understands there must be consequences for his actions. From the moment of his arrest, he has taken responsibility for his conduct. Mr. Chen knows what it is like to suffer financially. He did not come the United States with the intention to negatively affect those already here.

Mr. Chen has been in custody since July 31, 2024. He does not speak English. During much of his incarceration, he has been unable to communicate with his fellow inmates. Mr. Chen initially planned to bring his son once he had established himself. Unfortunately, as a result of his involvement in this offense, he has not seen his son, or anyone in his family, for more than four-years. Instead, he has spent much of the past twenty-eight months alone. He does not have any friends or family in the United States. He cannot afford to call his family. Mr. Chen has certainly felt the consequences of his actions, and he will never make the same mistakes again.

//

//

---

[1] Mr. Chen graduated with a four year degree in Computer Science and Japanese. (PSR at pg. 18 ¶ 84)

## II. The Guidelines Support the Requested Sentence

The Defense recommends the following Guidelines calculations:

| | |
|---|---|
| Base Offense Level [§ 2B1.1] | 7 |
| Loss Amount [§ 2D1.1(b)(1)(L) | +20 |
| Substantial Hardship [§ 2B1.1(b)(2)(C)] | +4 |
| Sophisticated Means [§ 2B1.1(b)(10)] | +2 |
| Possession of False ID's [§ 2B1.1(b)(11)] | +2 |
| Money Laundering [§ 2S1.1] | +2 |
| Minor Role [§3B1.2(b)] | -2 |
| Acceptance [§ 3E1.1] | -3 |
| Appellate Waiver [§ 5K2.2] | -2 |
| Governmental Recommended Variance [§ 3553(a)] | -2 |
| Total Offense Level | 28 |

At a Criminal History Category I, Mr. Chen's resulting Guideline range is 78-97 months. Mr. Chen respectfully moves this Court to impose a sentence of no more than forty-eight-months pursuant the enumerated factors described in § 3553(a).

## III. Offense Characteristics

As briefly discussed above, Mr. Chen immigrated to the United States in November, 2022. In China, he owned a restaurant. (PSR at pg. 17 ¶78) Unfortunately, after the emergence of COVID-19, he lost everything. *Id.* According to Mr. Chen, the Chinese Government did not offer significant financial stimulus support to its' populous. This resulted in the loss of many businesses and a deterioration of the middleclass. Mr. Chen was among those most affected. He lost his business, his home, and his savings. This put a tremendous strain on his marriage. Mr. Chen and his wife ultimately separated after more than twenty-years together.

In an attempt to get back on his feet, Mr. Chen moved to the United States. He wanted to establish himself financially, and, if possible, bring his family to live with him. Mr. Chen's friend, Jun Li, had moved to the United States about eight-

months before him. Mr. Li is also a defendant in this case[2]. Mr. Li helped Mr. Chen acclimate upon arriving in the United States. Mr. Li allowed Mr. Chen to live with him until Mr. Chen was able to find an apartment. Mr. Li also helped Mr. Chen find work. Mr. Chen was unaware that prior to his arrival, Mr. Li had already begun participating in this conspiracy.

One day, Mr. Li contacted Mr. Chen and asked him to meet. Because Mr. Chen did not have a car, Mr. Li drove to his apartment. Mr. Li asked Mr. Chen to drive his car. He told Mr. Chen that he needed to "pick-up a package." At this point, Mr. Li did not tell Mr. Chen that what he was doing was illegal. The two men drove to the parking lot of a store. Mr. Chen watched Mr. Li get out of the car, go into the store, and come out with a package. When Mr. Li returned to the car, he got in, opened the package, and began counting money. Mr. Li recorded himself counting the money. Once finished, Mr. Li met another man who took possession of the package.

Mr. Li paid Mr. Chen $200 for driving him to the store. Mr. Chen drove Mr. Li to collect packages twice. Each time, Mr. Li paid him $200. On the second trip, Mr. Li introduced Mr. Chen to his "bosses." It was through Mr. Li that Mr. Chen became involved in this offense. About ten days after his second trip with Mr. Li, Mr. Chen was invited to join the conspiracy. He was told there were approximately four individuals above him who would act as his handlers. These people would direct Mr. Chen where to go. They would provide him ID's to pick up the packages. They would collect the money once it was counted. Mr. Chen was not told where the money came from.

Initially, Mr. Chen was instructed to drive another individual to store locations. He did this several times. This person would collect packages in a similar manner as Mr. Li. Eventually, Mr. Chen was told to collect the money himself. The handlers would tell Mr. Chen where to pick-up the packages. They told him what time to be there. They provided Mr. Chen with the ID's. When Mr. Chen picked-up a package,

---

[2] Mr. Li is defendant No. 3. He was sentenced to sixty-three months custody on October 23, 2026. (Dkt. No. 209)

he was always being watched. Someone would generally follow him to the store location. Mr. Chen was not told how much money he would collecting beforehand.

Once at the store, Mr. Chen was required to record himself entering. He was instructed to use the name on the ID he was given and to collect the package. Once Mr. Chen had the package, he was told to go directly to his vehicle. Once back inside his car, he was required to film himself opening the package and counting the money. When he finished counting, he was told to immediately turn over the package. He was also instructed to return the ID and provide his handler with a copy of the recordings. Mr. Chen's handlers told him that if that if he did not comply with their requests, or "if anything went wrong," they would provide law enforcement with the recordings. Mr. Chen's handlers also took his passport.

Unfortunately, for Mr. Chen, something eventually "went wrong." Mr. Chen was directed to pick up a package in Irvine, Orange County. Once Mr. Chen arrived, one of his handlers got into his car and gave him an ID. The two waited in the car for about an hour. Mr. Chen did not know why they were waiting. When he asked, he was told to "shut-up." At some point his handler received a phone call from another one of the "bosses." They were told to "retreat" because law enforcement was at the pick-up location. Mr. Chen was instructed to drive away. Shortly thereafter, Mr. Chen was pulled over and arrested.

A couple days later, one of the handlers bonded Mr. Chen out of jail. This person picked him up from the Orange County, Santa Ana, Sherrif's Department. The next day, the person who paid Mr. Chen's bond, picked him up, and took him to meet the other three bosses. Mr. Chen was told to get into the back seat of a car. The handlers began to question Mr. Chen. They asked him what happened. They asked him what he said. They asked him if he gave law enforcement any information. Mr. Chen tried to explain that he did "not say anything." He repeatedly told them that he did not cooperate.

At this point, the men became more aggressive. They began to yell at Mr. Chen. They berated him. They threatened him. As their intensity rose, Mr. Chen became

scared. He believed these men were potentially dangerous, and he was not sure what they were going to do next. The men accused Mr. Chen of being a "rat," and called him "no good." At this point, one of the men sitting next to him, grabbed Mr. Chen around his neck area. He forcefully drew Mr. Chen closer to him, and punched him in the abdomen area. While Mr. Chen was being assaulted, the other men reminded Mr. Chen they had his passport and the videos.

Eventually Mr. Chen was released. He was terrified. He did not know what to do. He no longer wanted to work for this organization, but was not sure how he was going to survive. He was in a foreign country, very different from his own, unable to speak the language, and very much alone. Mr. Chen returned to his small apartment and began rebuilding his life. He had no contact with these individuals for several months. Mr. Chen began working at various restaurants and driving uber. He continued to struggle financially.

Mr. Chen was assaulted by his handler in June, 2023. Between June and December, Mr. Chen had no contact them. In December, one of the men called him, and asked Mr. Chen to pick-up two packages. He agreed. However, once again, Mr. Chen was detained by law enforcement and questioned. Mr. Chen was ultimately not arrested. This was the last time Mr. Chen worked for these people. For the ten-months leading up to his arrest, he was employed at restaurants and he drove Uber. Mr. Chen had severed his ties with this organization.

## IV. A Sentence of Forty-Eight-Months is Sufficient

As detailed in Mr. Chen's objection to the Presentence Report (Dkt. No. 210), his role within the offense was mitigated when compared to the average participant. His conduct supports a substantial variance from the guidelines. Mr. Chen was introduced to this conspiracy through his friend, June Li. Mr. Li had become involved in this offense several months prior. Mr. Chen came to the United States with little to no support. He relied on Mr. Li to guide him through the difficult process of assimilating into a very foreign culture.

While Mr. Chen does not blame Mr. Li for involving him in this offense, it does appear Mr. Li played an influential role. It was Mr. Li called who called him and asked if he would drive to a pick-up location. At that point, Mr. Chen did not know about the fraudulent scheme. Mr. Li did not tell Mr. Chen that what they were doing was illegal. Mr. Li only told Mr. Chen that he needed to go pick up a package from the store. Mr. Chen was "extremely surprised" when Mr. Li returned and began counting money in front of him.

After Mr. Li took Mr. Chen to collect money a second time, he introduced him to the "bosses." This was how Mr. Chen became involved in this scheme. The significance of Mr. Li's involvement in bringing Mr. Chen into the conspiracy is directly tethered to Mr. Chen's disadvantaged position at the time it occurred. As noted above, Mr. Chen came the United States unable to speak English, and with no family support, or network to rely on. Mr. Li had moved to the United States eight-months prior, and was more established.

The fact Mr. Chen was a recent immigrant, without financial or emotional support, is relevant because it resulted in Mr. Chen being more susceptible to influence. The fact Mr. Chen had few options, certainly does not absolve him for his decision to become involved in this offense. Nor does the fact Mr. Chen was introduced to this conspiracy through a trusted friend negate culpability. However, Mr. Chen's personal situation does support a more mitigated sentence. It distinguishes him from Mr. Li, and is a basis upon which to impose a lesser sentence than what his co-defendant received.

The collateral immigration consequences Mr. Chen will inevitably face, are also grounds upon which this Court should impose a downward variance. As reiterated throughout this pleading, Mr. Chen accepts full responsibility for his involvement in this offense. As he told Probation during the presentence-interview, he feels that he "deserves punishment." That said, an additional consequence facing Mr. Chen is deportation. He will likely be removed to China, or worse yet, a third party county after his release. Moreover, he will not receive the benefit of the First Step Act, or

Earned Time Credits. This warrants an additional downward variance to avoid disparity between Mr. Chen and other similarly situated defendants simply based upon citizenship.

Mr. Chen's incarceration has been more arduous than for the average person. As detailed above, Mr. Chen speaks Mandarin. He does not speak Spanish or English. During much of his time in jail, he has literally been unable to communicate with anyone. This has created a situation analogous to solitary confinement. Equally as problematic, Mr. Chen does not have family in the United States. He does not get personal visits. He does not have the financial ability to maintain consistent communication with his parents or his son in China. This is further complicated by the time difference. For these reasons, a downward variance is requested.

## V. Conclusion

A forty-six-month sentence is sufficient. Mr. Chen's role within this offense was limited to that of a courier. When he was recruited, he was in the most vulnerable moment of his life. Since being incarcerated, he has been isolated and alone. Although legally responsible for the totality of the agreed upon loss, the applied twenty points under USSG § (b)(1)(K) overstates Mr. Chen's actual conduct. Once he completes his prison term, Mr. Chen will likely be removed. The removal process will require additional time. When compared to Mr. Li, his conduct is slightly mitigated. He did not directly recruit or influence another person to become involved in this conspiracy. As such, a lower sentence than what Mr. Li received is appropriate.

Mr. Chen made the biggest mistake of his life when he became involved in this conspiracy. He deeply regrets how this has impacted the victims. Once released, he will begin rebuilding his life and start over. He will reunite with his son, and put this aberrant behavior behind him.

DATED: November 6, 2026.

By:/s/ Ryan T. Mardock
Ryan T. Mardock
Federal Defenders of San Diego, Inc
Attorneys for Mr. Chen